IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | Case No.: 1:14-MJ-144(JFA) |
| v. | ) | |
| | ) | |
| | ) | Trial Date: June 10, 2014 |
| TIFFANY R. GARDNER, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

The UNITED STATES OF AMERICA, by and through its undersigned counsel, hereby files its Response in Opposition to Defendant's Motion to Suppress Evidence and Defendant's Motion to Suppress Statements.

**INTRODUCTION**

The Defendant, Tiffany R. Gardner, is charged with: Possession of a Schedule I Controlled Dangerous Substance (Marijuana), in violation of 21 U.S.C. § 844(a); Possession of a Schedule II Controlled Dangerous Substance (Percocet), in violation of 21 U.S.C. § 844(a); and driving under the influence of a narcotic drug in violation of 18 U.S.C. § 13 assimilating Virginia Code, § 18.2-266(iii).

In her Motions, the Defendant moves to suppress evidence and statements obtained subsequent to the traffic stop, alleging that the stop resulted in unlawful search and seizure in violation of the Fourth, Fifth and Sixth Amendments.

1

## STATEMENT OF FACTS

At approximately 0818, on February 23, 2014, Marine Corps Police Officer Bonnecarrere observed the vehicle driven by the Defendant approaching Gate 5 of the MCB Quantico. The officer made contact with the Defendant during the 100% identification check. Upon making contact, the officer detected odor of marijuana, based on his training and experience, emitting from the Defendant's vehicle and person. The Defendant gave verbal consent to search her vehicle and all of the property within the vehicle.

At approximately 0822, the officer conducted a search of the Defendant's vehicle based on the verbal consent and the odor of marijuana. Officer located a green and brown substance along with a white tablet contained in a zip lock bag in the console of the vehicle. Defendant was placed in hand irons for the Defendant's safety and safety of the officer. Also, the defendant was verbally advised of her Civilian Suspect's Acknowledgement and Waiver of Rights, at which point the defendant did not invoke them and chose to speak with the officer. The defendant admitted to smoking marijuana at approximately 0500 that morning, and also taking a Percocet.

At approximately 0825 Marine Corps Police Officers Covey and George arrived on the scene and assisted in searching the vehicle. Officer Covey located a partially burned cigar located on the rear dash passenger side of the vehicle, containing green vegetable matter suspected to be marijuana that tested positive for THC.

At approximately 0930 Officer Bonnecarrere explained, demonstrated, and administered a series of Standardized Field Sobriety Tests. The defendant was not in hand irons while performing the sobriety tests. The officer conducted Horizontal Gaze Nystagmus test, Walk and Turn test, and One-leg Stand Test. During the Horizontal Gaze Nystagmus test, the Defendant displayed a lack of smooth pursuit in both eyes and distinct and sustained nystagmus at

maximum diviation. Defendant displayed nystagmus onset prior to 45 degrees in both eyes at approximately 30 degrees. During the Walk and Turn test, the Defendant nearly fell when she began the walk and turn, stopped walking and asked for directions again, and turned incorrectly by moving back foot from the line. During the One-Leg Stand, the Defendant put her foot down at the ten second mark.

At approximately 0956 the Defendant was transported to building 2043 (PMO) for processing. At 1111, the Defendant was transported to Stafford Hospital for blood draw based on a failed SFST and admission that she used controlled, dangerous substances that morning. At 1241 the Defendant was transported back to building 2043(PMO) for further processing after giving a voluntary blood sample.

At approximately 1315, Officer Bonnecarrere gave the Defendant written Civilian Acknowledgement and Waiver of Rights, which she invoked, ending questioning. At approximately 1330, the Defendant was released and was issued three citations for Possession of a Schedule I Controlled Dangerous Substance (Marijuana), Possession of a Schedule II Controlled Dangerous Substance (Percocet), and Driving Under the Influence.

## ARGUMENT

### 1. Closed Military Bases are Exempt from Probable Cause Requirement for Searches

The Fourth Circuit has held searches conducted on closed military bases to be valid regardless of whether base police had probable cause or particularized suspicion that defendant had committed a crime. "The case law makes clear that searches on closed military bases have long been exempt from the usual Fourth Amendment requirement of probable cause." *United States v Jenkins*, 986 F.2d 76, 78 (4th Cir. 1993). The court in *Jenkins* determined that, at

Andrews Air Force Base, the "barbed-wire fence, the security guards at the gate, the sign warning of the possibility of search, and a civilian's common-sense awareness of the nature of a military base – all these circumstances combine to puncture any reasonable expectations of privacy for a civilian who enters a closed military base." *Id*. at 79.

MCB Quantico is similar to Andrews Air Force Base in that it is also a closed base. Drivers attempting to enter MCB Quantico encounter similar conditions to those found at Andrews: armed security guards and a sign indicating that the driver is entering a closed military base and warning of the possibility of search. The Fourth Circuit has referenced this issue in an unpublished opinion:

> Both parties here recognize that searches and seizures on closed military bases are exempt from the Fourth Amendment's requirement for probable cause. The question we must decide in this appeal is whether MCB Quantico is a closed military base. We find that it is. The base houses the Marine Corps' Presidential helicopter squadron as support for the President of the United States. The base also serves as headquarters for the Marine Corps' Systems Command, training every Marine Corps officer, as well as many high-ranking foreign military officers. There are signs posted at every date, stating that the base is closed and warning of the possibility of search of all entering persons and their vehicles.

*United States v. Tate* No. 97-4086, 129 F.3d 118, 1997 WL 693049 (4th Cir. October 29, 1997).

The Defendant argues that the seizure was unlawful because it lacked probable cause. Def. Mot. To Supp. 3, 6.  In *Jenkins* the Fourth Circuit ruled that closed military bases are

4

exempt from the usual Fourth Amendment requirement of probable cause. According to *Tate*, MCB Quantico is a closed military base. Therefore, Fourth Amendment probable cause requirements do not apply to civilians attempting to enter MCB Quantico. In addition, warning signs at the entrance to MCB Quantico, notify persons entering the base of the possibility of a search.

In sum, the evidence in this case was obtained subject to a search on a closed military base, meaning that the Fourth Amendment probable cause requirement does not apply. As a result, the defendant's motion should be denied.

**2. The Search was Legal**

Even if this search occurred not on a closed military base for the purposes of the Fourth Amendment's probable cause requirement, then the government submits that the search in this case still was legal.

The Fourth Amendment provides, in relevant part, that the people are "to be secure in their persons . . . against unreasonable searches and seizures . . . and no Warrants shall issue, but upon probable cause." U.S. Const. Amend. IV. Under the Fourth Amendment, an officer may make a warrantless arrest, if supported by probable cause, of an individual in a public place. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). Under the automobile exception to the warrant requirement, the government may conduct a warrantless search of an automobile if the officer has probable cause to believe the car contains drugs. See *United States v. Ross*, 456 U.S. 798, 825 (1982) (observing that a warrant is unnecessary for an automobile search supported by probable cause). Furthermore, and particularly relevant to this case, the Fourth Circuit has held that the odor of marijuana, without more, may provide the requisite probable cause to support a warrantless search. See *United States v. Scheetz*, 293 F.3d 175, 184 (4th Cir. 2002) (holding that

the odor of marijuana provided probable cause to support a warrantless search of a vehicle and baggage).

The defendant was stopped at the entrance to MCB Quantico at Gate 5 during a 100% identification check. Officer Bonnecarrere made contact with the Defendant and detected odor of marijuana, emitting from the Defendant's vehicle and person. The odor of marijuana created a probable cause for the Officer to search the car. In addition, the Defendant waived her rights and gave verbal consent to search her vehicle. Items seized from the Defendant's car were obtained pursuant to a legal search, which was based on probable cause.

In sum, the evidence in this case was obtained on a closed military base, where the Fourth Amendment probable cause requirements do not apply. However, even if this search did not occur on a closed military base, the officer had probable cause to search Defendant's car because he detected odor of marijuana.

   3. **<u>Statements of the Defendant should not be Suppressed</u>**

The Defendant argues that her statements should be inadmissible because they were obtained in violation of Fifth and Sixth Amendment rights. In *Miranda*, the Supreme Court held that police officers must inform a person of certain rights after the defendant "has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 444, 436 (1996). "An individual is in custody for *Miranda* purposes when, under the totality of the circumstances, a suspect's freedom of action is curtailed to a degree associated with formal arrest." *United States v. Parker*, 262 F.3d 415, 419 (4th Cir. 2001) (internal quotation marks omitted). In determining whether those circumstances amount to a custodial interrogation, courts inquire "how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

The Supreme Court has held that "persons temporarily detained pursuant to [ordinary traffic] stops are not 'in custody' for the purposes of *Miranda*," *id*. at 440, because, unlike in stationhouse interrogations, traffic stops are "presumptively temporary and brief" and motorists are not "completely at the mercy of the police," *id*. at 437-38. Because they do not significantly limit suspects' liberty, ordinary traffic stops "cannot fairly be characterized as the functional equivalent of formal arrest," *id*. at 442, and thus do not trigger the need for *Miranda* warnings. See *United States v. Sullivan*, 138 F.3d 126, 130-31 (4th Cir. 1998) ("In short, while a motorist during a routine traffic stop is detained and not free to leave, the motorist is not 'in custody' for *Miranda* purposes.").

The Defendant was stopped at the entrance to the MCB Quantico pursuant to the 100% identification check. The officer detected the order of marijuana and the Defendant consented to the search of the vehicle. The Defendant was temporary detained to conduct a search of the Defendant's vehicle and to administer the standardized field sobriety tests. In sum, the stop was temporary and brief and according to the Supreme Court's ruling, was not an arrest.

If, however, a reasonable person would perceive this as an arrest, Officer Bonnecarrere verbally advised the Defendant of her Civilian Suspect's Acknowledgement and Waiver of Rights, which the Defendant did not invoke and chose to speak to the officer. After waiving her rights, the Defendant admitted to smoking marijuana at approximately 0500 that morning and also taking a Percocet, for which the Defendant claimed she had a prescription, but was not able to produce one. The Defendant failed three field sobriety tests and was given a series of drug abuse recognition tests. Pursuant to the failed field sobriety tests, the Defendant was transported to the Stafford Hospital where the Defendant gave a voluntary blood sample.

After the Defendant was brought to the building 2043 (PMO) in MCB Quantico, Officer Bonnecarrere gave her written Civilian Suspect's Acknowledgement and Waiver of Rights, which she invoked and the questioning ended.

In sum, the defendant was not under arrest when Officer Bonnecarrere made a stop at Gate 5 at the entrance to MCB Quantico. Even, however, if this court would find that the Defendant was under arrest pursuant to the stop, the Officer Bonecarrere verbally advised the Defendant of the Civilian Suspect's Acknowledgement and Waiver of Rights. The Defendant waiver her rights and chose to speak with the officer. When the Defendant was transported to building 2043 (PMO) for further processing, the officer gave the defendant written Civilian Suspect's Acknowledgement and Waiver of Rights, which the Defendant invoked and the officer stopped his questioning. None of the statements made by the Defendant were in violation of her Fifth and Sixth Amendment rights.

## CONCLUSION

For the foregoing reasons, the United States respectfully request that the defendant's Motion to Suppress Statements and the defendant's Motion to Suppress Evidence be denied.

Respectfully Submitted,

DANA BOENTE
Acting United States Attorney

By: _____/s/_____

Anna A. Vlasova
Special Assistant United States Attorney

CERTIFICATE OF SERVICE

      I hereby certify that on June 3, 2014, I filed the foregoing Government's Response in Opposition to Defendant's Motion to Suppress Evidence and Defendant's Motion to Suppress Statements with the Clerk of Court using the CM/ECF system, which will send an electronic copy to the following:

      Kevin Brehm
      Assistant Federal Public Defender
      Office of the Federal Public Defender
      1650 King Street, Suite 500
      Alexandria, Virginia 22315
      (703) 600 0825
      (703) 600 0880 (fax)
      Kevin_brehm@fd.org